# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>            Petitioner,<br><br>     v.<br><br>THE INSTITUTE FOR COLLEGE<br>ACCESS & SUCCESS,<br>            Respondent. | Misc. No. 13-mc-81 (ABJ-AK) |

## MEMORANDUM OPINION

The United States ("Government") seeks to enforce subpoena against The Institute for College Access and Success ("TICAS"), issued by the Office of the Inspector General of the Department of Education ("ED OIG").  U.S. District Court Judge Amy Berman Jackson referred the case to the undersigned for a determination.  Order of Referral [2].  Pending before the Court are the Government's Petition for Summary Enforcement of Inspector General Subpoena ("Petition") [1], with a Memorandum in Support [1-1] ("Mem."), TICAS's Answer to the Petition ("Answer") [8] with a Memorandum of Points and Authorities in Opposition ("Opp.") [8-1], and the Government's Reply to the Opposition ("Reply") [10].  The Court held a Motions Hearing on April 30, 2013.  Minute Entry 4/30/2013.  For the reasons outlined below, the Court **DENIES** the Government's Petition for Summary Enforcement of the Inspector General Subpoena against TICAS.

## BACKGROUND

The Institute for College Access and Success is a nonprofit 501(c)3 organization located in Oakland, California.  Decl. of Lauren Asher [8-2] at ¶ 4.  Through research, public education, and lobbying, TICAS works to make higher education accessible to all communities, especially those that are underrepresented in higher education.  *Id.*  TICAS accomplishes its objectives through a variety of issue briefs, public online tools, coalition building, and advice to policy makers.  *Id.* at ¶¶ 6-11.  TICAS is independent and nonpartisan, receiving funding through a combination of sources that include foundation grants, public charities, and individual donors.

*Id.* at ¶¶ 4,12.  TICAS does not receive any federal funding, either directly or indirectly, nor does it hold any contracts with the federal government.  *Id.* at ¶ 12.

Mr. Robert Shireman founded TICAS and served as its president from 2004 to April 19, 2009.  Decl. of Lauren Asher [8-2] at ¶ 26; Decl. of Lisa Foster [1-2] at ¶ 6.  In February 2009, he was appointed as a consultant to the ED Secretary and on April 20, 2009, he became the ED Deputy Undersecretary.  Decl. of Lisa Foster [1-2] at ¶ 7.  He returned to a consultant role on July 4, 2010, and ceased working for the ED on February 11, 2011.  *Id.*  The Office of the Inspector General of the Department of Education is currently investigating whether former ED Deputy Undersecretary Shireman violated federal ethics law, including 18 U.S.C. § 205(a)(2).  Mem. [1-1] at 1.  The Government alleged that Mr. Shireman communicated with TICAS and utilized his TICAS email account during his government appointment, specifically between the dates of February 3, 2009, and February 11, 2011.  *Id.* at 2-3.  Special Agent Lisa Foster acknowledged to TICAS's counsel that TICAS was not a subject of the investigation.  Decl. of Sharon Mayo [8-3] at ¶ 3.

The ED OIG issued and served a subpoena *duces tecum* on TICAS by mail on June 28, 2012, and TICAS accepted service through counsel.  Decl. of Lisa Foster [1-2] at ¶ 9.  The subpoena demanded production of the following documents

> For the period of February 3, 2009, to February 11, 2011:
> 1. Any and all communications (including email), and documentation of correspondence, between TICAS and Robert Shireman, including but not limited to communications between Pauline Abernathy and Robert Shireman.
> 2. To the extent not included above, any and all documents concerning Robert Shireman and/or any U.S. Department of Education negotiated rulemaking, including but not limited to documents related to "gainful employment" or "incentive compensation."
> 3. Any and all communications (including emails) and documents related to the student loan repayment meeting/conference hosted by TICAS and attended by Robert Shireman in April 2010.

Attach. 1 of Decl. of Lisa Foster [1-2] at 15.

TICAS, through counsel, informed Special Agent Foster via emailed letter on July 19, 2012, that it objected to the subpoena on nine grounds but was "reviewing its systems to see what documents reasonably can be retrieved and what it will voluntarily produce."  Ex. 2 of Decl. of Sharon Mayo [5-3] at 25-27.  On August 8, 2010, TICAS provided emails and documents relating to the student loan repayment meeting that occurred on April 29 and 30, 2010, in

response to subpoena request 3.  Attach. 4 of Decl. of Lisa Foster [1-2] at 32-36.  Special Agent Foster contacted TICAS's counsel on August 20, 2012, to request additional documents, and on August 22, 2012, she emailed that the ED OIG would seek judicial enforcement if TICAS did not produce documents by August 31, 2012.  Decl. of Lisa Foster [1-2] at ¶¶ 16-17.  TICAS's counsel confirmed that it produced the documents it intended to provide.  *Id*. at ¶ 18.  In an August 28, 2012, telephone call, TICAS counsel confirmed to Benjamin Shapiro, Assistance Counsel to the ED OIG, that TICAS continued to object to the subpoena and had voluntarily complied to the extent it was willing.  Decl. of Sharon Mayo [8-3] at ¶ 22.  During the hearing before this Court, the Government described the conversation between Special Agent Foster and TICAS's counsel as TICAS was told "they could treat [the subpoena] as voluntary for now, and if they did not comply, then it would become mandatory."  Hearing 4/30/2013.  Between the end of August 2012 and the filing of the Government's petition for enforcement on February 5, 2013, there was no communication between the parties.  Decl. of Sharon Mayo [8-3] at ¶ 23.

In its Reply, the Government explicitly stated that "the subpoena should be read more narrowly than the broad brush that TICAS now attempts to use in describing the requests" and that TICAS's counsel was told "the subpoena's request for documents relating to 'negotiated rulemaking' should be read to be limited solely to those documents concerning Mr. Shireman." Reply [10] at 2-3.  During the hearing, the Government noted that the subpoena requests "have to be taken in context not only with the subpoena itself but with the conversations that occurred [between Special Agent Foster, Government counsel, and TICAS counsel]."  Hearing 4/30/2013. The Government explicitly told the Court that it was seeking the following: as to request 1, "emails between TICAS and TICAS personnel and Mr. Shireman"; as to request 2, "all documents concerning Shireman…having his name on it…and the Department of Education negotiated rulemaking," specifically noting that the terms should be searched in combination; and as to request 3, the Government stated, "number 3 is the one that they did respond to and we believe that the response to number 3 is sufficient."  *Id.*  Based on the Government's representations during the hearing, the Court determines that the subpoena requests 1 and 2 are narrowed and subpoena request 3 is moot.  Accordingly, the Court will consider request 1 as a request for email communications between TICAS personnel and Mr. Shireman and request 2 as a request for TICAS documents that contain both phrases "Robert Shireman" and "negotiated rulemaking."

**LEGAL STANDARD**

The court's review of an administrative subpoena is a limited one.  *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1513 (D.C. Cir. 1993).  In determining whether to enforce an administrative subpoena, "the Court's role is limited to determining whether the subpoena is issued for a lawful purpose within the statutory authority of the agency that has issued it, whether the demand is sufficiently definite and not unduly burdensome, and whether the subpoena seeks information reasonably relevant to the agency's investigation."  *Adair v. Rose Law Firm*, 867 F.Supp. 1111, 1115 (D.D.C. 1994) (citing *Resolution Trust Corp. v. Walde*, 18 F.3d 943, 946 (D.C. Cir. 1994)).

**DISCUSSION**

The Court denies the Government's Motion to Enforce the Subpoena against TICAS. The Court finds that the ED OIG lacked authority to subpoena information from TICAS given its lack of relationship with the federal government.

**I.      Reach of Administrative Subpoenas**

While the reach of administrative subpoenas authorized under the Inspector General Act of 1978 is broad, it is not limitless.  Through the Inspector General Act of 1978, the ED OIG possesses authority "to conduct and supervise audits and investigations relating to the programs and operations of the [agency and]…to prevent and detect fraud and abuse in [the agency's] programs and operations."  5 U.S.C. App. 3 § 2(1-2).  The Supreme Court compared the power of an administrative subpoena to that of the Grand Jury, which "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950).  However, an administrative subpoena's reach is not boundless.  Courts have limited enforcement of administrative subpoenas when the OIG exceeded its statutory authority by trying to perform the agency's functions.  *See Truckers United for Safety v. Mead*, 251 F.3d 183 (D.C. Cir. 2001) (denying enforcement of subpoena because Department of Transportation Office of the Inspector General lacked authority to conduct agency's general compliance enforcement); *Burlington N. R.R. Co. v. Office of the Inspector Gen., R.R. Retirement Bd.*, 983 F.2d 631 (5th Cir. 1993) (denying enforcement of subpoena because Inspector General of the Railroad Retirement Board lacked authority to conduct ongoing regulatory compliance investigations).  Similarly, the Inspector General of the

Department of Defense lacked authority to subpoena a private crisis center when the investigation related to a matter outside of its statutory authority, it implicated individual privacy rights, and another administrative agency motivated the investigation.  *United States v. Montgomery Cnty. Crisis Ctr.*, 676 F.Supp. 98, 98-99 (D. Md. 1987).  Courts have limited the enforcement of subpoenas when they infringe on the privacy rights of individuals who are not the targets of the administrative investigation, *see In re McVane*, 44 F.3d 1127 (2d Cir. 1995) (holding that the government may not subpoena financial information of family members who are related to subjects of investigation) *but c.f. Fed. Deposit Ins. Corp. v. Garner*, 126 F.3d 1138 (9th Cir. 1997) (enforcing administrative subpoena against family members after finding that FDIC satisfied the heightened level of scrutiny), and even when they invade the individual privacy rights of individuals who are the investigation's targets, *see Walde*, 18 F.3d 943 (holding that the government may not subpoena individual's personal financial information to determine the cost-effectiveness of pursuing litigation).

Despite its expansive reach, "[a]n administrative subpoena thus may not be so broad so as to be in the nature of a 'fishing expedition.'" *Peters v. United States,* 853 F.2d 692, 700 (9th Cir. 1988).  The Supreme Court observed that "a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power." *Morton Salt Co.*, 338 U.S. at 652.  However, the court must enforce an administrative subpoena if the information sought "is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *Walde*, 18 F.3d at 946, citing *Morton Salt Co.*, 338 U.S. at 652.

Here, the Government seeks to subpoena information about alleged illicit communications between former ED Deputy Undersecretary Shireman and TICAS.  In order to accomplish that task, it requested email communications between TICAS personnel and Mr. Shireman and TICAS documents that contain both phrases "Robert Shireman" and "negotiated rulemaking."  Hearing 4/30/2013.  While email communications between Mr. Shireman and TICAS, if any such emails exist, would be relevant to the investigation's goal, the second request of documents is so unmanageably broad as to render its results irrelevant to the investigation's goals.  Given that "TICAS spent a significant portion of its efforts on the negotiated rulemaking," Decl. of Lauren Asher [8-2] at ¶ 37, during the period covered by the subpoena, it would be unsurprising for the phrase "negotiated rulemaking" to appear on documents with the

name of an ED employee.  These broad search terms are so sweeping that they go beyond contact with TICAS and Mr. Shireman and they can only be categorized as a fishing expedition unlikely to yield relevant information to the investigation.  Accordingly, the undersigned finds that the second subpoena request is not reasonably relevant to the stated purpose of the investigation.

## II.   Subpoena enforcement against private parties

Even if the request for communications between Mr. Shireman and TICAS is relevant, the undersigned finds that neither of the requests is within the ED OIG's subpoena authority. Offices of the Inspector General, including in the ED OIG, possess authority "to conduct and supervise audits and investigations relating to the programs and operations of the [agency and]…to prevent and detect fraud and abuse in [the agency's] programs and operations."  5 U.S.C. App. 3 § 2(1-2).  The Inspector General Act of 1978 is "expansive enough to extend the IG's authority beyond investigations of the agency itself to investigations of individuals and entities outside the agency involved with the agency's programs….[including] conducting audits and investigations of programs *that the agency finances*, including investigations into alleged fraud, abuse and waste by government contractors and *other recipients of government funds in connection with those programs*."  *Rose Law Firm*, 867 F.Supp. at 1115 (emphasis added). "Congress specifically intended to extend the OIG's power of review over private entities working closely with government agencies because such entities are privy to highly confidential information and are paid large sums of federal funds for their services, creating a potential risk for abuse both inside and outside government agencies."  *United States v. Hunton & Williams*, 952 F.Supp. 843, 849 (D.D.C. 1997).  The Government itself noted that

> [T]he Offices of Inspector General would not be a new "layer of bureaucracy" to plague the public. They would deal exclusively with the internal operations of the departments and agencies. *Their public contact would only be for the* beneficial and needed purpose of receiving complaints about problems with agency administration and in *the investigation of fraud and abuse by those persons who are misusing or stealing taxpayer dollars*.

124 Cong.Rec. 10405 (1978) (Comments of Representative Levitas) (emphasis added).  As both parties acknowledge, Representative Levitas's remarks, as a cosponsor of the Act, "are an authoritative guide to the statute's construction." *See North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 526–27 (1982); Mem. [8-1] at 13; Reply [10] at 6-7.  Upon a complete examination of his

comments, Representative Levitas focused explicitly on the waste of federal funding due to fraud and abuse, linking the statute to the receipt of federal money. *See* 124 Cong.Rec. 10405 (1978) (including his closing comments, "This bill will not create more government, but actually cut back on it and make certain that taxpayers get a dollar's value for a dollar spent. It will *save money* and will also assure that the *funds which are spent* end up where they are supposed to go" (emphasis added).)

Courts regularly enforce administrative subpoenas against a wide variety of individuals and organizations, all of whom had financial, contractual, or programmatic relationship with the federal government. *See Inspector Gen. of the U.S. Dept. of Agric. v. Glenn*, 122 F.3d 1007 (11th Cir. 1997) (enforcing subpoena against participants of federal disaster relief program); *Hunton & Williams*, 952 F.Supp. 843 (enforcing subpoena against law firm that contracted to provide services to a federal agency); *United States v. Custodian of Records, Sw. Fertility Ctr.*, 743 F.Supp. 783 (W.D. Okla. 1990) (enforcing subpoena against medical center that provided medical care for a Department of Defense agency); *United States v. Blue Cross & Blue Shield of Mich.*, 726 F.Supp. 1523 (E.D. Mich. 1989) (enforcing subpoena against medical insurance company contracting with a Department of Health and Human Services agency to implement federal Medicare program); and *United States v. Art Metal-U.S.A. Inc.*, 484 F.Supp. 884 (D.N.J. 1980) (enforcing subpoena against government contractor and its wholly owned subsidiary). Courts have also enforced ED OIG subpoenas when they sought information from organizations or institutions participating in ED programs, specifically those receiving federal student aid funds. *See United States v. Teeven*, 745 F.Supp. 220 (D. Del. 1990) (enforcing administrative subpoena against educational institution participating in federal student financial aid programs); *United States v. Wilfred Am. Educ. Corp.*, 1987 WL 10501 (D.D.C. 1987) (enforcing administrative subpoenas against participants in federal student financial aid programs to investigate misuse of federal funds).[1]

The Court concurs with the Respondent and finds that the ED OIG lacks authority to enforce the subpoena. TICAS is a private entity that "does not receive any funds directly or indirectly from the federal government or federal programs, nor does it contract with the federal

---

[1] A federal court enforced an ED OIG subpoena against an independent third party when the organization had a parallel investigation into a university's violations arising out of participation in federal program, but the respondent was willing to provide information so long as it received confidentiality protections and accordingly did not challenge the ED OIG's subpoena authority. *U.S. Dep't of Educ. v. Nat'l Collegiate Athletic Ass'n*, 2006 WL 3198822 (S.D. Ind. 2006), aff'd as to denial of protective order, 481 F.3d 936 (7th Cir. 2007).

government."  Decl. of Lauren Asher [8-2] at ¶ 12.  The Government acknowledged the absence of such a connection, stating that, "[TICAS does not] have a direct relationship like contractual or receiving money," but noting that TICAS's connection to the Government was through Mr. Shireman's alleged communications.  Hearing 4/30/2013.

The Government failed to sufficiently support its claim that the Inspector General Act of 1978 empowered the ED OIG to enforce an administrative subpoena against TICAS, a third party wholly unaffiliated with the federal government.  While the Government does offer one factually analogous case in which an administrative agency subpoenaed a third party for materials in his possession, different statutory language enabled the agency to do so.  In *United States v. Comley*, the First Circuit enforced an administrative subpoena against Stephen Comley, a third party unrelated to the government who recorded telephone conversations he had with an employee of the Nuclear Regulatory Commission (NRC).  890 F.2d 539 (1st Cir. 1989).  The statutory authority that enabled the NRC's Office of Inspector and Auditor to subpoena the recordings is 42 U.S.C. § 2201(c), which permits the agency "by subpoena to require *any person* to appear and testify, or to appear and produce documents."  (emphasis added).  Similarly, under the expansive administrative subpoena power granted to the Internal Revenue Service and the Federal Home Loan Bank Board, courts have enforced subpoenas against third party custodians of records, *see United States v. Harrington*, 388 F.2d 520 (2d 1968) (upholding enforcement of IRS subpoena of financial records of divorce attorney's client); *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875 (5th Cir. 1989) (reversing district court's decision quashing FHLBB subpoena of banking customer's financial records).  Unlike these agencies, the OIG ED's enabling act lacks an expansive reference to "any person" in the subpoena clause.  5 U.S.C. App. 3 §6(4).  Additionally, the Government failed to offer any case in which a court upheld the power of an administrative agency, acting pursuant to the Inspector General Act of 1978, to subpoena a third party wholly unrelated to the federal government.  Given the volumes of legal precedent under the Inspector General Act of 1978 in which OIGs had authority to subpoena third parties based on their relationship to federal funds, contracts, and programs, the complete absence of precedent establishing an OIG's power to subpoena unrelated third parties is significant.  The undersigned accordingly denies enforcement of the Government's subpoena against TICAS.

### III.      Government representations about the nature of compliance as voluntary

Lastly, the Government also conveyed conflicting messages to TICAS about the voluntary nature of the subpoena.  First, at the hearing, the Government described the conversation between Special Agent Foster and TICAS counsel, stating that "[TICAS] could treat [the subpoena] as voluntary for now, and if they did not comply, then it would become mandatory."  Hearing 4/30/2013.  The Government's request was either a voluntary, unenforceable request for assistance or a mandatory demand for production, but it could not be both.  The Government failed to offer legal authority as to how the subpoena could convert from voluntary to mandatory.

Additionally, the Government insufficiently explained the meaning of the language in the ED OIG Privacy Act Notification that accompanied the subpoena request.  *See* Attach. 1 of Decl. of Lisa Foster [1-2] at 16.  In the section entitled "Authority for the Solicitation of Information." the document stated:

> Department employees are required by paragraph VI.A.3 of ACS Directive OIG:1-102, "Cooperation with the Office of Inspector General," to respond to all official requests of representatives of the OIG unless providing information may tend to incriminate the employee.  Individuals and entities that have contract- or grant-based relationships with the Federal government may be required, by the terms of such relationship, to provide information.  Information requested by administrative subpoena is required to be provided to OIG.   In all other circumstances, providing information to the OIG is voluntary.

*Id.*  This Privacy Act Notification is vague as to what the ED OIG may demand from independent third parties unrelated to the federal government.  Specifically, the paragraph described the duties of department employees and individuals and entities with contract- or grant-based relationships, and then stated "Information requested by administrative subpoena is required to be provided to OIG."  Privacy Act Notification, Attach. 1 of Decl. of Lisa Foster [1-2] at 16.  The Government argued that the sentence should stand entirely independent of the remainder of the paragraph, therefore compliance by any subpoena recipient is required.  Hearing 4/30/2013.  However, with this sentence construction in the passive voice, the Court finds it unclear which actors are required to provide information requested by administrative subpoena and whether this statement applies only to the individuals described in the previous sentences or also applies to the general public.  In addition to the overreach of the ED OIG's

authority, the Court finds that the ambiguity in the subpoena request provides additional grounds to deny its enforcement.

## **CONCLUSION**

The Court denies the Government's Petition for Summary Enforcement of Inspector General Subpoena against TICAS because it extends beyond the statutory authority granted by the Inspector General Act of 1978.  Given that TICAS has no financial, contractual, or programmatic connection with the federal government, OIG ED lacks authority to subpoena information from this unrelated third party.  The Court finds that the Government initially represented that TICAS's compliance with the subpoena was voluntary, but the Government subsequently changed its position, stating that compliance was mandatory.  Additionally, the OIG ED Privacy Notice was vague as to the mandatory nature of production, leading the Court to find that the Government conveyed ambiguous messages about the subpoena.  The OIG can talk directly to the person that they are investigating to get the information they seek from TICAS.  Accordingly, the Court **DENIES** the Government's Petition for Summary Enforcement of the Inspector General Subpoena.

DATE:_7/26/2013___                           _____/s/_____

                                             ALAN KAY

                                             UNITED STATES MAGISTRATE JUDGE