# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                        )
UNITED STATES OF AMERICA,               )
                                        )
                    Petitioner,         )
                                        )
        v.                              )        Misc. Action No. 13-0081 (ABJ)
                                        )
THE INSTITUTE FOR COLLEGE               )
ACCESS & SUCCESS,                       )
                                        )
                    Respondent.         )
_____)


## MEMORANDUM OPINION

Petitioner United States of America filed a petition seeking to enforce an administrative subpoena issued to respondent The Institute for College Access and Success ("TICAS") by the Office of Inspector General of the United States Department of Education ("OIG") pursuant to the Inspector General Act of 1978, 5 U.S.C. app. 3 § 6(a)(4). Pet. for Summ. Enforcement of Inspector General Subpoena [Dkt. # 1]. The subpoena seeks documents and emails from TICAS that might shed light on the OIG's investigation of former Department of Education Deputy Undersecretary Robert Shireman. *See* Mem. in Supp. of Pet. for Summ. Enforcement of Inspector General Subpoena ("Pet. Mem.") at 1 [Dkt. # 1-1]. TICAS opposed enforcement. Answer to Pet. for Summ. Enforcement of Inspector General Subpoena ("TICAS's Answer") [Dkt. # 8].

On February 5, 2013, the Court referred the case to a Magistrate Judge pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72.2(a). Order Referring Case to Mag. Judge [Dkt. # 2]. The Magistrate Judge ruled that the motion to enforce the subpoena should be denied for three reasons: 1) OIG exceeded its authority under the Inspector General Act when it

issued a subpoena to a nonprofit organization that does not contract with the federal government or receive federal funds; 2) the second request was overbroad; and 3) the subpoena was ambiguous with respect to whether TICAS's compliance was mandatory. *See generally* Mag. Judge Mem. & Op. ("MJ Mem.") [Dkt. # 12]; Mag. Judge Order [Dkt. # 11]. The United States filed timely written objections to the ruling, Objections to Mag. Judge's Order & Mem. Op. ("US Obj.") [Dkt. # 16], and TICAS filed a response to those objections and also reasserted a First Amendment objection to the subpoena that the Magistrate Judge did not address. Mem. of Points & Authorities in Opp. to Gov't Object. ("TICAS's Resp.") [Dkt. # 18].

After careful review of the Magistrate Judge's ruling, the government's objections, and TICAS's response to those objections, the Court finds that the ruling is contrary to law and clearly erroneous, and therefore, it will not adopt it. For the reasons set forth below, the Court finds OIG's subpoena to be enforceable, and it will grant the United States' petition for summary enforcement and direct TICAS to comply with the subpoena.

## BACKGROUND[1]

TICAS is a nonprofit organization that focuses on making higher education more accessible and affordable to people of all backgrounds. TICAS's Resp. at 2; *see also* Decl. of Laura Asher, Ex. 2 to TICAS's Answer ("Asher Decl.") ¶ 4 [Dkt. # 8-2]. It achieves this goal by promoting public awareness about student loan legislation and by advocating for student loan legislation reform on behalf of students and their families. Asher Decl. ¶¶ 4–6. TICAS has also played an active role in at least four agency negotiated rulemaking procedures involving student

---

[1] A more detailed recitation of the facts is provided in the Magistrate Judge's ruling. MJ Mem. at 1–3. As no party objects to the facts as presented in that memorandum opinion, the Court will adopt them by reference.

loan issues.[2]  *Id.* ¶ 15; TICAS's Resp. at 3 ("Engagement in the regulatory process has been a core element of TICAS' work for many years.").  The organization is funded entirely by foundations, charities, and individual donations.  TICAS does not receive federal funds, either directly or indirectly; it does not participate in federal programs; and it does not contract with the federal government.  Asher Decl. ¶ 12; *see also* TICAS's Resp. at 2.

Robert Shireman was the founder of TICAS, and he served as the organization's president from 2004 to April 19, 2009.  Asher Decl. ¶ 26; Decl. of Lisa Foster, Ex. 2 to Pet. for Summ. Enforcement of Inspector General Subpoena ("Foster Decl.") ¶ 6 [Dkt. # 1-2].  He served as a consultant to the Secretary of the Department of Education starting in February 2009 and then became the Deputy Undersecretary of the Department in April of that year.  Foster Decl. ¶ 7.  In July 2010, Shireman returned to his consulting role, and he ended his employment with the Department on February 11, 2011.  *Id.*

The Inspector General of the Department of Education is currently conducting an investigation into Shireman's activities during his employment with the Department.  Pet. Mem. at 1.  Specifically, OIG is looking into possible violations of federal ethics laws – including 18 U.S.C. § 205(a)(2) – based on alleged communications that took place between Shireman and TICAS between February 2009 and February 2011.  *See id.* at 2–3.  OIG has made it clear that Shireman is the focus of its concern, and that TICAS is not a target or subject of the investigation.  Decl. of Sharon Mayo, Ex. 3 to TICAS's Answer ¶ 3 [Dkt. # 8-3].

---

2  Negotiated rulemaking is the process through which Department officials meet with designated stakeholders to discuss and negotiate the initial regulatory language that may eventually become a proposed rule.  Although TICAS has never served as an official negotiator at one of these sessions, it often provides support to student, consumer, and legal aid negotiators.  TICAS's Resp. at 3 n.1; *see also* Asher Decl. ¶ 15.

On June 28, 2012, OIG served TICAS with a subpoena calling for three categories of documents:

> For the time period February 3, 2009, to February 11, 2011:
>
> 1. Any communications (including email), and documentation of correspondence, between TICAS and Robert Shireman, including but not limited to communications between Pauline Abernathy and Robert Shireman.
>
> 2. To the extent not included above, any and all documents concerning Robert Shireman and/or any U.S. Department of Education negotiated rulemaking, including but not limited to documents related to "gainful employment" or "incentive compensation."
>
> 3. Any and all communications (including emails) and documents related to the student loan repayment meeting/conference hosted by TICAS and attended by Robert Shireman in April 2010.

Subpoena, Attach. 1 to Foster Decl. at 15 [Dkt. # 1-2]. TICAS voluntarily complied with the third request but objected to the remaining two and notified OIG that it would not comply with the subpoena. Pet. Mem. at 2. The matter remained unresolved, and approximately six months later, the United States filed the petition for summary enforcement that was referred to the Magistrate Judge. The government's objections to his ruling are now before this Court.

## STANDARD OF REVIEW

A court may refer nondispositive matters, including a petition to enforce an administrative subpoena, to a Magistrate Judge for resolution pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72.2. Fed. R. Civ. P. 72(a); LCvR 72.2(a); *see also New Life Evangelistic Ctr., Inc. v. Sebelius*, 847 F. Supp. 2d 50, 51 (D.D.C. 2012). Upon referral, the Magistrate Judge "must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision." Fed. R. Civ. P. 72(a); *see also* LCvR 72.2(a).

Once the Magistrate Judge issues his or her decision, any party may raise objections to that decision within fourteen days "after being served with the order." LCvR 72.2(b); *see also* Fed. R. Civ. P. 72(a). Failure to enter a timely objection will result in waiver. *See* Fed. R. Civ. P. 72(a).

The district court shall review "timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; *see also* LCvR 72.2(c). "A court should make such a finding when the court 'is left with the definite and firm conviction that a mistake has been committed.'" *New Life Evangelistic Ctr., Inc.*, 847 F. Supp. 2d at 53, quoting *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Entm't*, 659 F.3d 13, 21 (D.C. Cir. 2011).

## DISCUSSION

On July 26, 2013, the Magistrate Judge ruled in favor of TICAS, concluding that:

(1) OIG exceeded its authority under the Inspector General Act when it issued the subpoena because TICAS is "a third party wholly unaffiliated with the federal government," MJ Mem. at 6–8;

(2) The request for "any and all documents concerning Mr. Shireman and/or Department negotiated rulemakings" was "so sweeping" that it could "only be categorized as a fishing expedition unlikely to yield relevant information to the investigation" and therefore could not satisfy the requirements of an enforceable subpoena, *id.* at 4–6; and

(3) OIG's representations as to whether compliance with the subpoena was mandatory created confusion and "provide[d] additional grounds to deny its enforcement." *Id.* at 9–10.

The United States filed timely, written objections to the ruling and the Magistrate Judge's three determinations. *See generally* US Obj. TICAS responded in support of the ruling, and it offered an alternative ground – its First Amendment claim – upon which the Court could find the subpoena to be unenforceable. *See generally* TICAS's Resp.

# I. The conclusion that OIG cannot subpoena TICAS under the Inspector General Act is clearly erroneous and contrary to law.

The Inspector General Act, among other things, authorizes the Inspector General of an agency to "conduct, supervise, and coordinate audits and investigations relating to the programs and operations of such establishment" in order to promote "economy and efficiency in the administration of, or prevent[] and detect[] fraud and abuse in, its programs and operations."  5 U.S.C. app. 3 § 4(a)(1), (3).  To facilitate these audits and investigations, the Act also provides an Inspector General with a variety of investigatory tools, including the authority "to require by subpoena the production of all information, documents, reports, answers, records, accounts, papers, and other data in any medium (including electronically stored information, as well as any tangible thing) and documentary evidence necessary in the performance of the functions assigned by this Act."  *Id.* § 6(a)(4).

Here, TICAS does not challenge OIG's authority under the Inspector General Act to investigate Shireman's alleged violations of federal ethics law, but it does argue that OIG exceeded its authority when it used the subpoena power granted to it under section 6(a)(4) to require TICAS – an organization that is not affiliated with the government and not the target of the investigation – to produce documents that might shed light on OIG's investigation into Shireman.  TICAS's Resp. at 6–13; *cf. United States v. Comley*, 974 F.2d 1329, *1–2 (1st Cir. 1992) (noting that the OIG's investigatory authority under the Inspector General Act extends beyond the investigation of fraud and abuse linked to the expenditure of federal funds and requires an OIG to "work to identify, correct, and prevent problems in agency operations").  According to TICAS, this is a matter of first impression, *see* TICAS's Resp. at 16, and the Court has not come across binding precedent that is directly on point.  But it is of the view that the law favors the OIG's position.

The case law surrounding administrative subpoenas – whether they are cases issued under the Inspector General Act or another statutory grant of authority – makes it clear that "the court's role in a proceeding to enforce an administrative subpoena is a strictly limited one." *FTC v. Texaco, Inc.*, 555 F.2d 862, 871–72 (D.C. Cir. 1977); *see also Resolution Trust Corp. v. Thornton*, 41 F.3d 1539, 1544 (D.C. Cir. 1994). "Administrative agencies wield broad power to gather information through the issuance of subpoenas," *Thornton*, 41 F.3d at 1544, and a court reviewing the enforceability of a subpoena may consider "only whether 'the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant.'" *Id.*, quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *see also Adair v. Rose Law Firm*, 867 F. Supp. 1111, 1115 (D.D.C. 1994). "If an agency's subpoena satisfies these requirements, [the court] *must* enforce it." *Thornton*, 41 F.3d at 1544 (emphasis added), quoting *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 209 (1946); *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 878 (5th Cir. 1989) ("[A]n administrative agency's power to issue subpoenas as it performs its investigatory function is a broad-ranging one which courts are reluctant to trammel.").

TICAS urges this Court to affirm the finding that the subpoena is unenforceable, and it advances the theory that because OIG lacks the authority to *investigate* TICAS, it also lacks the authority to *subpoena* TICAS for information – even if that information relates to an investigation that OIG has the authority to undertake. TICAS's Resp. at 6–13; *see also* MJ Mem. at 6–8. But that conclusion is inconsistent with the administrative subpoena jurisprudence this Court is bound to follow. The first prong of the *Morton Salt Co.* test asks whether the *inquiry* is within the authority of the agency: does OIG have authority to conduct the underlying investigation that prompted the subpoena? Here, it is undisputed that OIG has authority to

investigate Shireman's conduct during his employment at the Department, and the three requests all relate to that lawful investigation. So it does not matter whether TICAS is a government contractor or if it receives federal funds because it is simply a third party being called upon to provide information needed to advance a lawful OIG inquiry into someone else.[3]

This conclusion flows from the plain language of the Inspector General Act. Section 6(a)(4) of the Act provides an Inspector General with the authority "to require by subpoena the production of *all* information, documents, reports, answers, records, accounts, appears, and other data in any medium . . . necessary in the performance of the functions assigned by this Act." 5 U.S.C. app. 3 § 6(a)(4) (emphasis added). It does not purport to identify and it does not limit the set of individuals or entities to whom a subpoena may be issued; the only requirement is that the information sought be necessary for the OIG to perform its statutorily assigned duties.[4] Here,

---

[3] The legislative history of the Inspector General Act does not point to a different conclusion. TICAS quotes a statement by Representative Elliott H. Levitas:

> [T]he Offices of the Inspector General would not be a new "layer of bureaucracy" to plague the public. They would deal exclusively with the internal operations of the departments and agencies. *Their public contact would only be for* the beneficial and needed purpose of receiving complaints about problems with agency administration and in *the investigation of fraud and abuse by those persons who are misusing or stealing taxpayer dollars.*

MJ Mem. at 6, quoting 124 Cong. Rec. 10405 (1978) (emphasis added) (Comments of Rep. Levitas). But this statement does not rule out the possibility that a private entity could be asked to provide information during the course of a proper OIG investigation.

[4] The Court's conclusion that section 6(a)(4)'s plain language should be given its broad meaning is reinforced when one considers the case law likening administrative subpoena power to the authority of the grand jury. *See Thornton*, 41 F.3d at 1546 ("[A]n administrative agency's subpoena power is analogous to that of a grand jury . . . ."); *United States v. Hunton & Williams*, 952 F. Supp. 843, 853 (D.D.C. 1997) (noting that courts typically compare OIG subpoena authority to that of the grand jury to "underscore the similarity between the two bodies' extensive powers of inquiry"). There is no question that a grand jury can subpoena documents from third parties in possession of information that may be relevant to an investigation of others.

the OIG of the Department of Education is exercising a statutorily assigned duty to determine whether an employee of the Department violated federal ethics laws by communicating improperly with TICAS during his employment at the Department, and the documents subpoenaed from TICAS relate directly to that inquiry. The subpoena therefore fits within the plain language of OIG's statutory authority.

The case law addressing administrative subpoena power in other contexts also supports the enforceability of the OIG subpoena here. For example, in *United States v. Harrington*, the Court of Appeals for the Second Circuit determined that the Internal Revenue Service could subpoena records of a target's divorce from his ex-wife under section 7602 of the Internal Revenue Code even though she was not under investigation herself. 388 F.2d 520, 522 (2d Cir. 1968); *see also Sandsend,* 878 F.2d at 879 (enforcing a subpoena issued pursuant to 12 U.S.C. § 1730(m)(2) against a bank for customer records even though neither the bank nor the customers were the subject of the investigation, and noting that, although the Federal Home Loan Bank Board's investigative authority has its limits, its "investigatory tools . . . are not so limited"); *United States v. Art Metal-U.S.A., Inc.*, 484 F. Supp. 884 (D.N.J. 1980) (enforcing a subpoena issued to a third party even though it was not an express party to the GSA contract under investigation, and explaining that "[a]dministrative agencies vested with investigatory and subpoena powers may compel the production of information and documents from third persons

who are not expressly within their regulatory jurisdiction, so long as the information sought is relevant and necessary to the effective conduct of their authorized and lawful inquiry").[5]

The Magistrate Judge distinguished *Harrington*, noting that the operative Internal Revenue Code provision specifically authorizes the issuance of a subpoena to "any person" and that the Inspector General Act does not include the same language. MJ Mem. at 8. But in this Court's view, the absence of that language is not dispositive; indeed, the *Harrington* court did not even point to those words in reaching its conclusion. The case can still be instructive, particularly since the Inspector General statute does contain other broad language permitting the use of subpoenas to collect "all information." 5 U.S.C. app. 3 § 6(a)(4). Moreover, the D.C. Circuit has previously looked to cases implementing other statutory schemes when considering the scope of the Inspector General Act. *See, e.g.*, *Rose Law Firm*, 867 F. Supp. at 1115, citing *Resolution Trust Corp. v. Walde*, 18 F.3d 943, 946 (D.C. Cir. 1994) (concerning subpoena power in the context of FIRREA).

Indeed, one could argue that a comparison of the language in the two statutes supports the OIG and not TICAS. Section 7602 of the Internal Revenue Code lists the parties to whom a

---

5      Even *In re McVane v. FDIC*, 44 F.3d 1127, 1139 (2d Cir. 1995), in which the Second Circuit ultimately concluded that the subpoenas at issue could not be enforced, does not support TICAS in this case. In that case, the court recognized the heightened privacy interests of subpoenaed individuals who are not the subjects of an investigation, and it found that the agency had not made the necessary showing of need for the information it was seeking in that instance. *Id.* at 1137–39. Those concerns are not present in this case; TICAS is a corporate entity and is therefore not entitled to the same heightened privacy protection that might apply to an individual. *See id.* at 1137 ("In cases in which the third party was a corporate entity, for example, the *Morton Salt* test has applied."). And other language in the *In re McVane* opinion suggests that the court would enforce the subpoena in this case: "This concern for third parties' rights by no means has led courts to quash any and every subpoena directed at a third party. . . . To be sure, courts have tended to afford greater deference when the third party is 'directly associated' with an investigation target or is not a 'stranger' to the target." *Id.* at 1137–38, quoting *Sandsend*, 878 F.2d at 878.

summons may be issued under that section: "the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account[ing] . . . ." 26 U.S.C. § 7602(a)(2) (2012). In other words, the provision as a whole operates to define and *limit* the universe of potential summons recipients. But section 6(a)(4) of the Inspector General Act, by contrast, does not place any boundaries on the scope of OIG's subpoena authority by listing a finite category of individuals and entities to whom a subpoena may be addressed. 5 U.S.C. app. 3 § 6(a)(4). Instead, it grants broad subpoena power that is limited only by the requirement that the records sought be necessary to the performance of the OIG's duties. *Id.*

Based upon all of these considerations, the Court concludes that the Magistrate Judge's finding that OIG lacked authority to issue a subpoena to TICAS is contrary to law.[6]

## II. The conclusion that request item two was overbroad and therefore irrelevant is clearly erroneous.

The second part of the *Morton Salt Co.* test requires the reviewing court to make sure that the subpoena's "demand is not too indefinite and [that] the information sought is reasonably relevant" to the underlying OIG investigation. 338 U.S. at 652. Relevance is a broad standard and requires only that the information sought "be relevant to *some* (any) inquiry that the [agency] is authorized to undertake." *Hunton & Williams*, 952 F. Supp. at 854 (alterations in original), quoting *United States v. Oncology Servs. Corp.*, 60 F.3d 1015, 1020 (3d Cir. 1995) (internal quotation marks omitted). Courts "defer to the agency's appraisal of relevancy, which 'must be

---

[6]     TICAS argues that this Court cannot find that the Magistrate Judge acted contrary to law without first discovering binding precedent that contradicts the Magistrate Judge's ruling. TICAS's Resp. at 13. The Court disagrees. A decision on a question of first impression may be contrary to law when it is at odds with the statutory language that it interprets and the legal framework that provides the background against which the question must be resolved.

accepted so long as it is not obviously wrong.'" *Walde*, 18 F.3d at 946, quoting *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992).

Here, the second request in the OIG subpoena called for production of "any and all documents concerning Robert Shireman *and/or* any U.S. Department of Education negotiated rulemaking." Subpoena, Attach 1 at 15 (emphasis added).[7] The Court would be inclined to agree with the finding that this request was overbroad. But at a hearing before the Magistrate Judge, the United States clarified its position and narrowed the request to call for only those TICAS records that "contain both [the] phrases 'Robert Shireman' and 'negotiated rulemakings.'" MJ Mem. at 3.

The Court finds that the narrowed request satisfies the relevance requirement. Contrary to TICAS's suggestion, *see* Asher Decl. ¶ 37, the second request no longer requires production of any document with the words "negotiated rulemaking" and the name of *any* Department employee; it requires production of any document with the words "negotiated rulemaking" and the name "Robert Shireman." Those documents requested are plainly relevant to the ongoing investigation. Thus, the Court finds that the conclusion that the second request was an impermissible "fishing expedition" is clearly erroneous.

---

7    In its response to the United States' objections, TICAS also alleged that the government's investigation into Shireman was an after-the-fact fabrication and offered evidence to show that the government's accusation that TICAS solicited "Mr. Shireman's assistance 'in drafting its comments to the Department's proposed rulemaking' [was] demonstrably false." TICAS's Resp. at 14, quoting Ex. 3 to Pet. for Summ. Enforcement of Inspector General Subpoena at 23 [Dkt. # 1-2]. But this argument cannot serve as a basis for denying enforcement of the administrative subpoena. It is not for the Court to decide whether OIG's allegations are founded, and OIG is not required to satisfy any burden of proof to justify issuance of a subpoena: "Like a grand jury, any agency 'can investigate merely on suspicion that the law is being violated, *or even just because it wants assurance that it is not*." *Thornton*, 41 F.3d at 1544 (emphasis added), quoting *Morton Salt Co.*, 338 U.S. at 642–43.

**III. The conclusion that OIG's subpoena is unenforceable because it was not clear whether compliance was mandatory is contrary to law.**

The third and final ground upon which the Magistrate Judge declined to enforce OIG's subpoena was that OIG made conflicting statements about whether TICAS's compliance with the subpoena would be mandatory. MJ Mem. at 9–10. TICAS urges this Court to adopt that position by pointing to language in the subpoena itself and referring to conversations that occurred between TICAS's representatives and OIG officials. TICAS's Resp. at 18–20. But TICAS does not proffer any legal authority that would permit the Court to deny enforcement of a subpoena on that ground.

As set forth more fully above, judicial review is cabined in an administrative subpoena enforcement proceeding. The reviewing court may consider only whether "the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant" to the agency's investigation, *Morton Salt Co.*, 338 U.S. at 652. The court *must* enforce the subpoena if those requirements are met. *Okla. Press Publ'g Co.*, 327 U.S. at 209; *Thornton*, 41 F.3d at 1544. It therefore follows that this Court cannot deny enforcement of OIG's subpoena – which satisfies the three *Morton Salt Co.* requirements – on the grounds that there was confusion regarding whether TICAS's compliance was mandatory, even if that confusion was sown by the OIG itself.

**CONCLUSION**

For the reasons set forth above, the Court declines to adopt the Magistrate Judge's conclusion that OIG's subpoena is unenforceable. It will therefore grant the United States'

petition for summary enforcement of OIG's subpoena, and TICAS will be directed to comply with any unfulfilled subpoena requests.[8]  A separate order will issue.


_Amy B Jackson_

AMY BERMAN JACKSON
United States District Judge

DATE:  March 19, 2014

---

8      In its response to the United States' objections, TICAS suggests that, should this Court find that the Magistrate Judge's proffered reasons for denying enforcement of the subpoena fall short, the Court should rely on its First Amendment claim to uphold the Magistrate Judge's conclusion.  TICAS's Resp. at 20–23.  But the Court finds that argument unavailing.  Although the speech and associational protections afforded by the First Amendment have been invoked in defense of an administrative subpoena, *FEC v. Machinists Non-Partisan Political League*, 655 F.2d 380, 389–90 (D.C. Cir. 1981), the presence of First Amendment issues alone is not enough to thwart its enforcement.  As TICAS notes, but ultimately fails to address, a subpoena will be enforced if the government can demonstrate that it has a compelling interest in obtaining that information.  TICAS's Resp. at 21–22, citing *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449 (D.D.C. 2002).  The D.C. Circuit has stated that a compelling interest exists – and that a subpoena will be enforced regardless of potential First Amendment issues – where the agency seeking the information is conducting an investigation pursuant to its statutory authority. *Machinists*, 655 F.2d at 390.  Here, OIG is conducting a statutorily authorized investigation into Shireman's activities and the subpoena at issue is relevant to that investigation.  Consequently, even assuming that the subpoena infringes on TICAS's First Amendment rights, the subpoena is nonetheless enforceable.